1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RANDY PALMER,

                              Petitioner,

        v.

RONALD FRAKER, et al.,

                              Respondents.

No. C09-5703 FDB/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  April 23, 2010**

        This case has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636 (b) (1) and Local MJR 3 and 4.    Petitioner Randy Palmer filed a 28 U.S.C. § 2254 habeas corpus petition relating to his 2004 convictions.  Dkt. 1.  Respondent filed a response (Dkt. 10) and submitted relevant portions of the state court record.  Dkt. 11. Having carefully considered the parties' filings and the record relevant to the grounds raised in the petition, the undersigned recommends that Mr. Palmer's habeas petition be denied and this action dismissed.

*STATEMENT OF THE CASE*

A.      *Basis of Custody*

        Petitioner Randy Palmer is in the custody of the Washington State Department of Corrections and is currently incarcerated at the Clallam Bay Corrections Center in Clallam Bay, Washington. He was convicted at a bench trial in King County Superior Court of a total of eight offenses:

REPORT AND RECOMMENDATION - 1

- Counts I, V, and VI:  three counts of Rape in the First Degree, with deadly weapon enhancements on Counts I and V
- Count II:  Unlawful Imprisonment, with a deadly weapon enhancement
- Count III:  Felony Harassment, with a deadly weapon enhancement
- Count IV:  Assault in the Fourth Degree (a gross misdemeanor)
- Count VII:  Solicitation to Commit Kidnapping in the First Degree
- Count VIII:  Solicitation to Commit Murder in the First Degree

On July 19, 2004, the state trial judge (the Honorable Richard F. McDermott) sentenced Mr. Palmer.  Dkt. 11, Exh. 1 (felony judgment and sentence); Exh. 2 (non-felony judgment and sentence); Exh. 31 (transcript of sentencing hearing).  On Counts I, V, and VI (the three rape counts) the court sentenced him to an indeterminate sentence under former RCW 9.94A.712[1] of life imprisonment, with three consecutive, 120-month minimum terms. The court set determinate confinement terms for the solicitation counts (Counts VII and VIII) at 48 months and 360 months, respectively.  The court ordered that the sentences on the three rape convictions and the two solicitation convictions (Counts I, V, VI, VII, and VIII) run consecutively and the sentences for the gross misdemeanor assault conviction (Count IV) and the two remaining felony convictions (Counts II and III) run concurrently with each other and concurrently with the sentences for the other convictions.  The court also ordered the confinement terms for the deadly weapon enhancements, totaling 60 months, to run consecutively with each other and consecutively to the underlying crimes.  The court accordingly set Mr. Palmer's minimum prison sentence at 828 months.  Dkt. 11, Exh. 1.

---

[1] Former RCW 9.94A.712 (now codified at RCW 9.94A.507) is an indeterminate sentencing scheme applicable to specified sex offenses or certain other offenses that are committed with a sexual motivation.  It requires the court to impose a sentence for such crimes consisting of a maximum term and a minimum term.  The maximum term will be the statutory maximum sentence for the particular offense; the minimum term will be either within the standard sentencing range for the offense or an exceptional outside the standard range if the offender is eligible for such a sentence.  See RCW 9.94A.507(3) (2008).

REPORT AND RECOMMENDATION - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

B.      *Factual Background*

The Washington Court of Appeals summarized the facts of Mr. Palmer's crimes as

follows:

> The evidence from the trial showed that petitioner met Cordelia Reed in late 2001 and they became romantically involved.  Reed and her adult son moved in with Palmer.

> According to Reed, Palmer soon became abusive and she moved out of his residence into a trailer.  On May 27, 2002, Palmer arrived at Reed's trailer early in the morning.  He had kept Reed's car to work on it, but she wanted it back and he agreed to take her to pick it up.  They used methamphetamine together on the drive, and when they arrived at petitioner's home, he convinced Reed to go inside with him.  Inside, Palmer immediately became angry and threatened Reed with a large knife.  He threatened to cut her son's heart out, and demanded she give him oral sex.  She complied in fear for her life and Palmer then told her to take a bath.  Reed tried to lock the bathroom door, but Palmer unscrewed the doorknob and came into the bathroom.  When a visitor came to the house, Palmer held a knife to Reed to keep her quiet.  After the visitor left, Palmer washed the bed sheets and raped Reed vaginally, again threatening her with the knife.

> Palmer told Reed she could leave, but as she tried to walk away, he ran into her with his truck.  Palmer pulled Reed into the truck and took her back to the house.  He then kept her at the house, reminding her of stories he had told her before about how he had tortured a man, and telling her he would cut up her body and scatter the parts around the county.  Reed believed his threats and thought she was going to be killed.  Later that night, Palmer drove Reed to her trailer so she could let her son inside because he did not have a key.  Palmer instructed her to let her son in the trailer and then return to Palmer's truck.

> Crying and upset, she let her son and a woman friend into the trailer, then returned with Palmer to his truck.  Back at Palmer's house, Reed was forced to submit to extremely painful anal intercourse.  Reed's son, in the meantime, had armed himself with firearms and obtained two male friends who accompanied him to Palmer's house.  When they arrived they demanded Reed be allowed to go with them.  Palmer eventually agreed.  As they drove away, Reed told the men what had happened.  They took her directly to a hospital and a sexual assault examination disclosed injuries consistent with Reed's report.

> According to police witnesses, Palmer was arrested and agreed to speak with them, but admitted being guilty only of keeping Reed from leaving when she wanted to.

REPORT AND RECOMMENDATION - 3

1
2
3
4
5
6
7

While Palmer was in jail on rape and kidnapping charges, Palmer asked inmate Andrew Robison, who he had known before, to kidnap Reed to prevent her from testifying. Robison instead told Reed and cooperated with police. Several months later, Palmer asked another inmate, Michael Poasa, to murder Reed. They had not previously met, but both were involved in the methamphetamine trade in the area and knew some of the same people. Palmer gave Poasa coded instructions about how to locate Reed and how to obtain weapons from a mutual acquaintance to use to kill her. After he was released, Poasa also contacted police to cooperate with them. Poasa wore audio and video recording devices and had conversations with Palmer in the visiting room at the jail using coded language to discuss killing Reed.

8
9
10
11
12
13
14
15
16
17
18

At trial, Palmer testified that Reed's description of their relationship was inaccurate. Notwithstanding his height of six feet five inches and weight of 210 pounds compared to her height of five feet and weight of 100 pounds, he testified that particular instances of domestic violence she described had either not happened or had resulted from her instigating the fights. He characterized Reed as more heavily involved in methamphetamine than he was. As for the events on and around May 27, he had sex with Reed several times but testified that it was all consensual and he never threatened her with a knife or gun or even showed her a knife. He disagreed with Reed's son and the other witnesses describing his encounter with them, testifying that it was Reed's son who was upset and angry. Palmer denied striking Reed with his truck. He explained that police had misheard his statement they interpreted as admitting he had held Reed against her will. He denied telling Robison anything that could be interpreted as soliciting him to kidnap Reed. He also denied asking Poasa to kill Reed, said he did not write a letter Poasa said he received from Palmer, and explained numerous references in his recorded statements to Poasa as discussing potential robberies of a location where methamphetamine supplies could be found and not being coded references to killing Reed as Poasa testified.

19
20
21

At the conclusion of the trial, the court entered specific findings. The court found Reed's testimony credible because it was corroborated by the physical evidence and other witnesses. The court also found that evidence of Palmer's discussions with Robison and Poasa clearly referred to plans to kidnap and kill Reed. The court specifically found Palmer's testimony not credible.

22

Dkt. 11, Exh. 15 at 2-5.

23

C.     *Procedural History*

24
25

Mr. Palmer through counsel appealed his sentence to the Washington Court of Appeals,

26

arguing that the trial court's imposition of consecutive terms for the five serious violent offenses

REPORT AND RECOMMENDATION - 4

violated the Sixth Amendment and the *Apprendi*[2] line of Supreme Court cases.  Dkt. 11, Exh. 4,

pp. 6-16.  On September 12, 2005, the Court of Appeals issued a one-paragraph, per curiam

opinion rejecting Mr. Palmer's arguments.  *Id.*, Exh. 6.  He filed a petition for review with the

Washington Supreme Court advancing one ground for review:

> Whether the imposition of consecutive sentences under RCW 9.94A.589(1)(b),
> based on the sentencing judge's factual finding that the defendant's serious
> violent offenses arose from separate and distinct criminal conduct, violates the
> requirement of *Blakely v. Washington*, __U.S. __, 124 S. Ct. 2531, 159 L. Ed. 2d
> 403 (2004), that any fact increasing a defendant's sentence be found by a jury.

Dkt. 11, Exh. 7 at 1 (footnote omitted).  On March 6, 2007, the Supreme Court denied review

without comment.  *Id.*, Exh. 8.  The Court of Appeals issued its mandate on March 23, 2007.  *Id.*,

Exh. 9.

   On November 12, 2007, Mr. Palmer filed a pro se motion with the trial court under

Washington Superior Court Criminal Rule (CrR) 7.8 arguing that there was insufficient evidence

to support his conviction on the three rape counts and the two solicitation counts.  *Id.*, Exh. 10.

The State filed a motion to transfer the CrR 7.8 motion to the Court of Appeals to be treated as a

personal restraint petition, which the trial court granted.  *Id.*, Exhs. 11 and 12.  The State then

filed a response to the petition with the Court of Appeals, and Mr. Palmer through counsel filed a

reply.  *Id.*, Exhs. 13 and 14.  On October 27, 2008, the Chief Judge of the Court of Appeals

denied Mr. Palmer's petition, concluding that the evidence presented at trial was constitutionally

sufficient.  *Id.*, Exh. 15.  Mr. Palmer's counsel filed a motion for discretionary review with the

Supreme Court raising one issue for review:

> Was there sufficient evidence to support the convictions of the Petitioner for
> Solicitation to Commit First Degree Murder; Solicitation to Commit Kidnapping
> in the First Degree; and three counts of Rape in the First Degree?

---

[2] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2002).

REPORT AND RECOMMENDATION - 5

Dkt. 11, Exh. 16.  On March 17, 2009, the Commissioner of the Washington Supreme Court denied Mr. Palmer's motion, concurring with the Chief Judge's assessment of the sufficiency of the evidence.  *Id.*, Exh. 17.  The Court of Appeals issued a certificate of finality on July 22, 2009.  *Id.*, Exh. 18.

### ISSUES FOR FEDERAL HABEAS REVIEW

On November 12, 2009, Mr. Palmer through counsel filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 with this Court.  Dkt. 1; *see also* Dkt. 2 (memorandum in support of petition). This petition presents four claims for habeas relief:

1.  By sentencing Mr. Palmer to 828 months the court violated Mr. Palmer's Sixth Amendment Right as well as his Fourteenth Amendment Right. As a result of this failure, the Petitioner was denied his right to due process.

2.  Mr. Palmer had a right to have a jury hear and if appropriate impose an exceptional sentence. When the court imposed 828 months it violated Mr. Palmer's right to a jury trial.

3.  Mr. Palmer maintains that the imposition of 828 months is in violation of the eighth Amendment of the United States Constitution and said sentence constitutes cruel and unusual punishment.

4.  Mr. Palmer maintains that there was insufficient evidence to convict him of Solicitation to Commit Murder in the First Degree; Criminal Solicitation of Kidnapping in the First Degree and Rape in the First Degree.

Dkt. 1, pp. 4-5 (CM/ECF pagination).

### EXHAUSTION

Respondent concedes that Mr. Palmer exhausted his first, second, and fourth claims for habeas relief to the Washington Supreme Court.  Dkt. 10, p. 6.  Respondent contends, however, that Mr. Palmer failed to exhaust his third claim for relief, alleging a violation of the Eighth

REPORT AND RECOMMENDATION - 6

1    Amendment, because this ground has never been presented to the state courts and that Mr.

2    Palmer is now procedurally barred from pursuing his third claim for relief.  *Id.*

3          For the reasons set forth more fully below, the undersigned agrees that Mr. Palmer has

4    failed to exhaust his third claim for relief and that he is procedurally barred.

5                                    *EVIDENTIARY HEARING*

6          The decision to hold a hearing is committed to the court's discretion.  *Williams v.*

7    *Woodford*, 306 F.3d 665, 688 (9th Cir. 2002).    State court findings are presumptively correct in

8    federal habeas corpus proceedings, placing the burden squarely on the petitioner to rebut the

9    presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  In deciding whether to

10   grant an evidentiary hearing, a federal court must consider whether such a hearing could enable

11   an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant

12   to federal habeas relief.  *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007).  Because the

13   deferential standards prescribed by § 2254 of the Antiterrorism and Effective Death Penalty Act

14   (AEDPA) control whether to grant habeas relief, a federal court must taken into account those

15   standards in deciding whether an evidentiary hearing is appropriate.  *Id.*

16         An evidentiary hearing is not required where the petition raises solely questions of law or

17   where the issues may be resolved on the basis of the state court record.  *Totten v. Merkle*, 137

18   F.3d 1172, 1176 (9th Cir. 1998).  The petitioner must demonstrate that an evidentiary hearing

19   would materially advance his claims and explain why the record before the court, or an expanded

20   record, is inadequate for review.  *Totten*, 137 F.3d at 1176-77; see also Rule 8 of the Rules

21   Governing  2254 Cases.  It is not the duty of the state court to ensure that the petitioner develops

22   the factual record supporting a claim.  *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir.

23   2004) (citing *McKenzie v. McCormick*, 27 F.3d 1415, 1419 (9th Cir. 1994)); see also *Baja v.*

REPORT AND RECOMMENDATION - 7

1   *DuCharme*, 187 F.3d 1075, 1079 (9th Cir. 1999); *In re Rice*, 118 Wash.2d 876, 884, 828 P.2d

2   1086, cert. denied, 506 U.S. 958 (1992).

3       Respondents have submitted the transcript volumes for the entire trial and sentencing

4   proceedings in *State v. Palmer*, King County Superior Court No. 02-1-03253-9 KNT.  Dkt. 11,

5   Exhs. 19-31.  The court finds that the grounds for relief presented by Petitioner may be resolved

6   solely by reference to the state court record.  Therefore, no evidentiary hearing is required in this

7   case.

8
9                                  *STANDARD OF REVIEW*

10      Federal courts may intervene in the state judicial process only to correct wrongs of a

11  constitutional dimension.  *Engle v. Isaac*, 456 U.S. 107 (1983).  Pursuant to the federal habeas

12  statute for state convictions, a federal court may entertain an application for writ of habeas

13  corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or

14  law or treaties of the United States."  § 2254(a)(1995).  The Supreme Court has repeatedly held

15  that federal habeas corpus relief does not lie for errors of state law.  *Estelle v. McGuire*, 502 U.S.

16  62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

17      In a habeas corpus petition, the Antiterrorism and Effective Death Penalty Act of 1996

18  (AEDPA) establishes the district court's standard of review of the state court's decision.  *Barker*

19  *v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).  Under AEDPA, a federal court cannot grant a

20  writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits in

21  state court unless the state court's adjudication of the claim:

22
23          (1)  resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as determined by the
24          Supreme Court of the United States; or

25
26

REPORT AND RECOMMENDATION - 8

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA standard of review "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams*, 529 U.S. at 405-06). A state court decision also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of

REPORT AND RECOMMENDATION - 9

the facts in light of the evidence presented in the State court proceeding.'"  *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)).  As noted above, however, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

*DISCUSSION*

A.     *Third Claim  - Procedural Bar and Exhaustion*

In his third claim for habeas relief, Mr. Palmer asserts that his minimum sentence of 828 months violates the Eighth Amendment to the Constitution.  Dkt. 1, p. 5.  Although Mr. Palmer challenged his sentence on direct appeal in the state courts, he did so on the basis of the Sixth Amendment and due process requirements of *Apprendi* and Blakely.  The Eighth Amendment was not part of his state court arguments.

A state prisoner must exhaust state remedies with respect to each claim before petitioning for a writ of habeas corpus in federal court.  *Granberry v. Greer*, 481 U.S. 129, 134 (1987).

28 U.S.C. § 2254 (b)(1) states, in pertinent part, that:

 (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28. U.S.C. § 2254 (b)(1) (Emphasis added.)

REPORT AND RECOMMENDATION - 10

Section 2254(b)(1) provides that a habeas petition must be denied if the petitioner failed to exhaust his state court remedies. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  In order to exhaust state remedies, the petitioner must "fairly present" his federal claims to the state courts thereby giving the state the opportunity to address and correct alleged violations of the petitioner's federal rights. *Duncan*, 513 U.S. at 365; *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir.1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Voerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

A complete round of the state's established review process includes presentation of a petitioner's claim to the state's highest court.  *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1993), cert. denied 513 U.S. 935 (1994).  However, "[s]ubmitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation."  *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).  Consequently, presentation of a federal claim for the first time to a state's highest court on discretionary review does not satisfy the exhaustion requirement.  *Castille*, 489 U.S. at 351; *Casey v. Moore*, 386 F.3d 896, 915-18 (9th Cir. 2004), cert. denied 545 U.S. 1146 (2005). But see *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available.").

For a claim to be cognizable in federal court, the claim must first be presented to the Washington State Supreme Court based upon the same federal legal theory and the same factual

REPORT AND RECOMMENDATION - 11

basis as the claim is subsequently asserted here.  See, *Hudson*, 686 F.2d 826, 829-30 (9th Cir. 1982).  State courts are not required to comb the record in order to discover the federal nature of the prisoner's claim; the federal claim must be contained within the four corners of the prisoner's state-court brief or petition.  *Baldwin v. Reese,* 541 U.S. 27, 31-32, 124 S.Ct. 1347, 1350-51, 158 L. Ed.2d 64 (2004).  Additionally, both federal and state briefing rules forbid the practice of incorporation by reference. See Fed. R. App. P. 28-1(b); *Kibler v. Walters*, 220 F.3d 1151, 1153 (9th Cir. 2000); *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 949 P.2d 370, 375 n.4 (1998) (Supreme Court will not review incorporated arguments from Court of Appeals briefing).

Moreover, the claim must be presented as a federal constitutional violation at every level of the Washington state courts' review.  *See Ortberg v. Moody,* 961 F.2d 135, 138 (9th Cir. 1992) (a petitioner must properly raise a habeas claim on every level of direct review in order to properly exhaust).

The record clearly reflects that Mr. Palmer's third claim for relief was not included in the claims his appellate counsel submitted to the state courts on direct appeal or in his personal restraint petition.  The third claim for relief is, therefore, unexhausted.

    *(i)*    *Procedural Bar of Unexhausted Claim*

Because Mr. Palmer's third claim is unexhausted, the Court is presented with a mixed petition containing both exhausted and unexhausted federal claims, which, in itself requires dismissal of the petition.  Federal courts "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims."  *Rhines v. Weber,* 125 S. Ct. 1528, 1532-33 (2005).  Instead, such petitions "must be dismissed for failure to completely exhaust available state remedies." *Jefferson v. Budge,* 419 F.3d 1013, 2005 WL 1949886 *2 (9th Cir. 2005) (citing *Rose v. Lundy*, 455 U.S. 509, 518-22 (1982)).

REPORT AND RECOMMENDATION - 12

Before dismissing the petition, generally the Court is required to provide a petitioner with "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Id.; see also Rhines*, 125 S. Ct. at 1535; *Tillema v. Long*, 253 F.3d 494, 503 (9th Cir. 2001) (court must provide *habeas corpus* litigant with opportunity to amend mixed petition by striking unexhausted claims). However, when a petitioner would be procedurally barred from returning to the state court to address the unexhausted claims, the Court need not provide Petitioner with this choice.

In this case, the record reflects that Mr. Palmer is now procedurally barred from presenting his unexhausted third claim to the Washington State courts.  The record reflects that his third claim is also procedurally barred pursuant to RCW 10.73.090(3), RCW 10.73.140, and RAP 16.4(d), because more than one year has passed since Mr. Palmer's 2004 judgment and sentence became final and he previously filed a personal restraint petition.  Under Washington law, a defendant may not collaterally challenge a conviction more than one year after the conviction becomes final. RCW 10.73.090.  Washington law also prohibits the filing of successive collateral challenges. RCW 10.73.140; RAP 16.4(d).

Mr. Palmer's judgment and sentence became "final" for purposes of the state limitations period on March 23, 2007, when the Washington Court of Appeals issued its mandate at the conclusion of the direct appeal.  Dkt. 11, Exh. 9; RCW 10.73.090(3)(b).  Any personal restraint petition that Mr. Palmer might now file challenging his 2004 judgment and sentence would be well past the one-year time limit and therefore, subject to summary dismissal.  Additionally, because Mr. Palmer previously filed a personal restraint petition, a second personal restraint petition would be subject to the successive petition rules of Washington Rule of Appellate Procedure (RAP) 16.4(d)9 and RCW 10.73.140.10.  Under RAP 16.4(d), if a petitioner was

REPORT AND RECOMMENDATION - 13

represented by counsel in a prior personal restraint proceeding, it is an abuse of the writ for him

to raise an issue in a new personal restraint petition that was available but not relied upon in the

prior petition. *In re Stenson*, 153 Wn.2d 137, 145, 102 P.3d 151 (2004); *In re Jeffries*, 114

Wn.2d 485, 492, 789 P.2d 731 (1990). In such a case the petitioner's new claim is barred under

RAP 16.4(d) unless he demonstrates that it is based upon an intervening change in the law or

newly discovered evidence. *Stenson*, 153 Wn.2d at 145. RCW 10.73.140 also prohibits the

filing of a successive personal restraint petition, regardless of the petitioner's lack of prior

representation, unless the petitioner can establish "good cause" for his second or subsequent

petition. RCW 10.73.140; *In re Becker*, 143 Wn.2d 491, 495-500, 20 P.3d 409 (2001); *In re

Johnson*, 131 Wn.2d 558, 566-67, 933 P.2d 1019 (1997). *See also In re Holmes*, 121 Wn.2d

327, 330-31, 849 P.2d 1221 (1993) (applying "good cause" standard to successive pro se

personal restraint petition).

Because Mr. Palmer's third claim for relief has not been fairly presented to the state

courts, the claim is now barred from being reviewed in the state courts due to his default. Before

he can obtain federal habeas review of his third ground for habeas relief, Mr. Palmer must

demonstrate either: (1) cause for his default in the state-court proceedings and actual prejudice

from the alleged error, or (2) that he is actually innocent.

*(ii)  Cause and Actual Prejudice To Overcome Procedural Default*

To satisfy the "cause" prong, petitioner must show that 'some objective factor external

to the defense" prevented him from complying with the state's procedural rule. *McCleskey v.

Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Objective factors constituting "cause" include "interference by officials" making compliance

with the procedural rule impracticable, as well as "a showing that the factual or legal basis" for

REPORT AND RECOMMENDATION - 14

1   the claims "was not reasonably available." *Id*. at 493-94 (internal quotes omitted).

2   Constitutionally ineffective assistance of counsel also constitutes cause, but any attorney error

3   short of that will not excuse procedural default. *Id*. at 494.

4          The mere fact that a petitioner is *pro se* or lacks knowledge of the law is insufficient to

5   satisfy the cause prong.  That is, "[w]hen a pro se petitioner is able to apply for post-conviction

6   relief to a state court, the petitioner must be held accountable for failure to timely pursue his

7   remedy to the state supreme court." *Hughes v. Idaho State Board of Corrections*, 800 F.2d

8   905, 909 (9th Cir. 1986) (finding petitioner's claims of illiteracy and lack of help in appealing

9   post-conviction petition, though unfortunate, to be insufficient to meet cause standard); *Boyd*,

10  147 F.3d at 1126-27.   Once a petitioner establishes cause, he must show "'actual prejudice'

11  resulting from the errors of which he complains." *Id*. (quoting *United States v. Frady*, 456 U.S.

12  152, 168 (1982)).  Such prejudice exists if the alleged errors worked to the petitioner's "*actual*

13  and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

14  *Frady*, 456 U.S. at 170 (emphasis in original).   In the alternative, a *habeas corpus* petition may

15  be granted without a showing of cause in those "extraordinary instances when a constitutional

16  violation probably has caused the conviction of one innocent of the crime." *McCleskey*, 499

17  U.S. at 494; *Murray*, 477 U.S. at 495-96.

18         Mr. Palmer has made no showing that some objective factor external to his defense

19  prevented him from complying with Washington's procedural bar rule.  Because Mr. Palmer

20  "cannot establish any reason, external to him, to excuse his procedural default," this Court need

21  not address the issue of actual prejudice." *Boyd*, 147 F.3d at 1127; *Thomas v. Lewis*, 945 F.2d

22  1119, 1123 n.10 (9th Cir. 1991).  Furthermore, because Mr. Palmer does not present new

23  evidence of actual innocence, this is not the kind of extraordinary instance where the petition

REPORT AND RECOMMENDATION - 15

should be granted despite the absence of a showing of cause. *McCleskey*, 499 U.S. at 494; *Murray*, 477 U.S. at 495-96. See also, *Schlup v. Delo*, 115 S. Ct. 851, 867 (1995) ("The exception is available only where the petitioner 'supplements his constitutional claim with a colorable showing of factual innocence.'")

Mr. Palmer has not provided the Court with any evidence of cause and prejudice or a fundamental miscarriage of justice.  Because he cannot excuse his procedural default, his third claim alleging unreasonable bail is not cognizable in this federal habeas corpus proceeding.

The court now turns to the merits of Mr. Palmer's first, second and fourth claims.

B.      *First and Second Claims – Apprendi*

In his first and second grounds for relief, Mr. Palmer takes issue with the state trial judge's imposition of consecutive terms based upon judicial (rather than jury) fact-finding employing a preponderance-of-the-evidence standard (rather than beyond reasonable doubt). Dkt. 1, pp. 4-5.  He argues that this was a violation of his due process and Sixth Amendment rights as announced in the Supreme Court's *Apprendi* and *Blakely* decisions.  Dkt. 2, pp. 2-3.

Respondent argues that Mr. Palmer is simply wrong because the Supreme Court has expressly held that the relevant fact-finding of a judge in deciding whether serious violent offenses involved "separate and distinct conduct" for purposes of RCW 9.94A.589(1)(b), is not subject to the *Apprendi/Blakely* rule.  Dkt. 10, pp. 9-10.

The Sixth Amendment right to a jury trial and the Due Process Clause of the Fourteenth Amendment are applicable to criminal sentencing and require that a jury must find beyond a reasonable doubt any fact, other than a prior conviction, that results in a sentence that exceeds the statutory maximum for that offense. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).  "Other than the fact of a prior conviction, any fact that

REPORT AND RECOMMENDATION - 16

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  The relevant "statutory maximum" under *Apprendi* embraces not only the traditional statutory maximum for the offense, but also the high end of a legislatively prescribed sentencing range.  *Blakely v. Washington*, 542 U.S. 296, 303-04, 124 S. Ct. 2531, 2537-38, 159 L. Ed. 2d 403 (2004) (applying *Apprendi* to presumptive sentencing ranges under Washington's Sentencing Reform Act).  "[T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."  *Blakely*, 542 U.S. at 303 (emphasis in original).

The Sixth Amendment permits trial judges to make the predicate fact findings in determining whether sentences for discrete offenses will be imposed consecutively or concurrently.  *Oregon v. Ice*, 555 U.S. __, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009).  This is because, unlike sentences exceeding the statutory maximum, the decision to impose consecutive sentences is not within the traditional jury function that "extends down centuries into the common law."  *Ice*, 129 S. Ct. at 717 (quoting *Apprendi*, 530 U.S. at 477). "[L]egislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in *Apprendi*.  There is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury's domain as the bulwark at trial between the State and the accused."  *Ice*, 129 S. Ct. at 718.

Mr. Palmer was convicted of three separate counts of first degree rape, one count of solicitation to commit first degree kidnapping, and one count of solicitation to commit first degree murder, each of which is considered a "serious violent offense" for purposes of

REPORT AND RECOMMENDATION - 17

1    Washington sentencing law.[3]  *See* RCW 9.94A.030(41)(a)(i), (vi), (vii), (ix).  Under RCW

2    9.94A.589(1)(b), trial courts are required to impose consecutive sentences in cases where a

3    defendant "is convicted of two or more serious violent offenses arising from separate and

4    distinct criminal conduct."  The Washington Supreme Court has held that determining whether

5    serious violent offenses constitute "separate and distinct criminal conduct" is properly a

6    judicial determination, and not something that must be submitted to the jury, so long as the

7    sentence for each offense does not exceed the maximum sentencing range.  *State v. Cubias*,

8    155 Wn.2d 549, 553-55, 120 P.3d 929 (2005).

9

10          Mr. Palmer waived a jury and therefore, the trial court was also the trier of fact.  The

11   trial court determined that the two solicitation counts were separate and distinct crimes.  Dkt.

12   11, Exh. 31, pp. 21-22.  The elements of the underlying crimes Mr. Palmer solicited

13   (kidnapping and murder) were different, the persons solicited (Robison and Poasa) were

14   different, and the crimes occurred months apart (one in 2002, the other in 2003).  The trial

15   court also found that the three rapes were separate and distinct crimes. They were committed

16   over a 16 to 18 hour period and were sequential, not simultaneous or continuous crimes.  *Id.*,

17   Exh. 31 at 24.  Accordingly, the trial court imposed consecutive prison terms for each of the

18   serious violent offenses on the basis of the court's determination that the crimes were separate

19   and distinct conduct and that the Washington legislature had prescribed consecutive sentences

20   in such cases.  *Id.* at a 24-25.

21          Each of the consecutive sentences Mr. Palmer received for his five serious violent

22   offenses (Counts I, V, VI, VII, and VIII) was within the standard sentencing range for that

23

24

25   ---
     [3] Mr. Palmer received concurrent sentences for the unlawful imprisonment, felony harassment, and fourth degree
     assault convictions (*see* Dkt. 11, Exhs. 1 and 2), and he does not challenge those sentences.

26

REPORT AND RECOMMENDATION - 18

particular count. While the total sentence for the five counts exceeded the range for each count individually, that is only because the sentences were ordered to run consecutively, which is permitted under *Blakely*. *See Oregon v. Ice*, *supra*.  Mr. Palmer's minimum prison term of 828 months did not exceed the statutory maximum that was authorized by the verdicts.  He was not entitled to a jury determination of whether those individual sentences should run concurrently or consecutively.  See Dkt. 11, Exh. 1, pp. 1-2, 4 and Appendix C.

In addition, Mr. Palmer was subject to indeterminate sentencing under former RCW 9.94A.712 on the first degree rape counts (Counts I, V, and VI), which required the trial court to impose both a minimum and a maximum term for each of those offenses.  Those crimes are categorized as Class A felonies carrying a maximum punishment of life imprisonment. *See* RCW 9A.44.040(2); RCW 9A.20.021(1)(a).  Thus, the "high end" of the presumptive sentence range for Mr. Palmer's three rape counts was life imprisonment.  *See* RCW 9.94A.712(3)(a) ("Upon a finding that the offender is subject to sentencing under this section, the court shall impose a sentence to a maximum term and a minimum term."); RCW 9.94A.712(3)(b) ("The maximum term shall consist of the statutory maximum for the offense.").  The consecutive determinate prison terms the trial court imposed on Counts I, V, and VI represent his *minimum* terms on those counts.  Thus, the challenged judicial fact-finding at issue with respect to the rape counts merely affected the minimum term of imprisonment Mr. Palmer would receive and did not affect his maximum term (life imprisonment).  This kind of minimum sentencing does not implicate the *Apprendi/Blakely* rule.[4]

---

[4] As noted by Respondents, the Sixth Amendment gives a criminal defendant the right to have a jury find any facts that increase the *maximum* sentence, not any fact that increases the *minimum* sentence.  *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986).  Although *McMillan* pre-dates *Apprendi*, this feature of Sixth Amendment jurisprudence remains intact.  *See United States v. Harris*, 536 U.S. 545, 568, 122 S. Ct. 2406, 2420, 153 L. Ed. 2d 525 (2002) (reaffirming *McMillan* and rejecting effort to overrule *McMillan* in light of *Apprendi*).

REPORT AND RECOMMENDATION - 19

The Washington Court of Appeals affirmed the trial court's sentencing decision on direct appeal and rejected Mr. Palmer's *Blakely*-based challenge:

> PER CURIAM.  Randy Palmer appeals the sentence imposed following his convictions for rape, harassment, solicitation, unlawful imprisonment, and fourth degree assault.  Citing <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), he contends his sentence is unlawful because the court imposed consecutive sentences under RCW 9.94A.589(1) based on a finding that Palmer's serious violent offenses involved separate and distinct conduct.  He acknowledges that we rejected the same argument in <u>State v. Kinney</u>, 125 Wn. App. 778, 106 P.3d 274 (2005) but contends <u>Kinney</u> is wrongly decided.  We adhere to our decision in <u>Kinney</u>.

Dkt. 11, Exh. 6.

The Washington Court of Appeal's decision was correct under state law and was neither contrary to, nor an unreasonable application of, clearly established federal law for purposes of 28 U.S.C. § 2254(d) analysis. Under *Oregon v. Ice*, state court judges may properly decide whether to run criminal sentences consecutively or concurrently, and that determination is not subject to the *Apprendi-Blakely* rule.  Accordingly, the undersigned recommends that relief on Mr. Palmer's first and second claims for relief be denied.

C.      *Fourth Claim – Insufficiency of the Evidence*

In his fourth ground for relief Mr. Palmer argues that there was insufficient evidence presented at trial to support the convictions for the three rape counts (Counts I, V and VI), and two solicitation counts (Counts VII and VIII).  Dkt. 2, p. 4-6.

When evaluating a claim of insufficiency of the evidence to support a conviction, the question is not whether the court itself believes the evidence establishes guilt.  "Instead, the

---

*See also Blakely*, 542 U.S. at 304 (distinguishing Washington's exceptional sentencing system from the one at issue in *McMillan*, noting that "*McMillan* involved a sentencing scheme that imposed a statutory *minimum* if a judge found a particular fact" and therefore did not violate the Sixth Amendment).

REPORT AND RECOMMENDATION - 20

relevant question is whether . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis original).  The court must "view the record as a whole in the light most favorable to the prosecution." *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.), cert. denied, 489 U.S. 1077 (1990).

The court's review is limited to "record evidence." *Herrera v. Collins*, 113 S. Ct. 853, 861 (1993).  Review is sharply limited, and the Court owes great deference to the trier of fact. *Wright v. West*, 112 S. Ct. 2482, 2492, (1992).  A sufficiency of evidence review is undertaken with reference to the elements of the criminal offense as set forth by state law.  *Jackson*, 443 U.S. at 324 n. 16.

Mr. Palmer's conviction is now presumptively lawful and the burden is on him in this § 2254 proceeding to do more than merely question the credibility of the witnesses or to allege that he was unable to pay the money he offered to the two different witnesses to accomplish the crimes he solicited. He must establish that (1) no rational trier of fact could have found the elements of the crimes beyond a reasonable doubt, in accordance with the *Jackson v. Virginia* standard, and (2) that the Washington Court of Appeals' adjudication of his *Jackson* claim was either contrary to or an unreasonable application of *Jackson*, for purposes of § 2254(d).

In its rejection of Mr. Palmer's insufficiency of evidence claim, the Washington Court of Appeals reviewed the entire trial record and held that the evidence was sufficient to establish the elements of the charged offenses under Washington law:

> In reviewing a sufficiency challenge, the test is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]  "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted

REPORT AND RECOMMENDATION - 21

most strongly against the defendant."[2]  Circumstantial evidence is as reliable as direct evidence.[3]

. . .

Palmer first challenges the sufficiency of the evidence regarding solicitation to commit first degree murder.  To convict petitioner of that charge, the State was required to prove the elements of (1) an offer to pay another to engage in specific conduct that would constitute first degree murder, and (2) an intent to promote or facilitate the murder. [4]A person is guilty of first degree murder if, with premeditated intent, he or she causes the death of a person or a third person.[5]

Palmer focuses exclusively on the evidence of the recorded statements.  Because he did not expressly ask Poasa to kill Reed during any of those conversations, he argues the State's evidence was insufficient.  But, as described above, Poasa testified to much more direct statements by Palmer when he first met him in custody, when Palmer was not concerned that they might be recorded, as he was later when Poasa visited him at the jail.  Reviewing the sufficiency of the evidence requires viewing the recorded conversations in the context of Poasa's testimony about their earlier conversations and the nature of the coded method he and Palmer used for discussing the plan.  Viewing the evidence in the light most favorable to the State, a finder of fact clearly could find beyond a reasonable doubt that the totality of the discussions proved the necessary elements of the offense.

Palmer next contends that there was insufficient evidence to show that he offered Robison anything of value to give him an incentive to kidnap Reed.  But Robison specifically testified that Palmer offered him $10,000 to make sure that Reed did not show up for court.  In a later meeting, he explained that he needed her not to come to court but did not want her hurt, and at the end of their last conversation on the topic, during which Robison had attempted to reach agreement on a plan for kidnapping Reed, Palmer used a gesture to suggest injecting Reed with something.  Viewed in the light most favorable to the state, the evidence was sufficient to show that Palmer offered Robison money to intentionally abduct Reed to interfere with the performance of a governmental function, facilitate commission of a felony, or to inflict bodily injury on her, which would constitute first degree kidnapping.[6]

Next, Palmer argues the evidence was insufficient to convict him of the three counts of first degree rape.  More specifically, he argues that there was insufficient proof that he used a weapon on any of the three counts.  But Reed specifically testified that Palmer held a knife to her throat and threatened to cut her heart out immediately prior to the first rape, and just before the second rape, he picked up a knife and held it toward her.  During the third rape, one of

REPORT AND RECOMMENDATION - 22

Palmer's guns was in the room and he referred to it.  Under the circumstances, the court could rationally find that Palmer threatened to use a deadly weapon and was armed with a deadly weapon for the first two counts of rape.  Likewise, while he was not armed with a deadly weapon during the third count, the rape was achieved by the implied threat to use the gun in the room if Reed resisted him.  In sum, the evidence was clearly sufficient to find the challenged elements of Palmer's offenses proved beyond a reasonable doubt.

[1] State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1990).
[2] State v. Salina, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[3] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).
[4] RCW 9A.28.030(1).
[5] RCW 9A.32.030(1)(a).
[6] RCW9A.40.020.

Dkt. 11, Exh. 15, pp. 2, 5-7.

(i)      Criminal Solicitation to Commit Kidnapping in the First Degree

Andrew Robison testified that Mr. Palmer offered to pay him $10,000.00 to make sure the victim did not testify at Mr. Palmer's trial.  Dkt. 11, Exh. 23 at 615-17.  Robison indicated that Mr. Palmer was not joking.  Id. at 616.  That first conversation occurred on the day Robison was being released from jail, and he later returned to the jail on a couple of occasions as a visitor of Mr. Palmer's.  On one occasion, Mr. Robison proposed to Mr. Palmer that he could have the victim kidnapped as a way to make her unavailable to testify.  Mr. Palmer stated "whatever you got to do, you got to do," "do what you got to do," and "whatever works, as long as she's not in court."  Id. at 630-31, 634, 683.  In their last conversation together, Mr. Palmer made a syringe-like gesture to suggest that the victim could be injected with something.  Id. at 638-40.  Mr. Robison also testified that Mr. Palmer suggested that, as a potential "down payment" for Robison's kidnapping of the victim, he knew where Robison could obtain some propanol, which is a chemical used in the manufacture of methamphetamine.  Id. at 635-36, 684.

REPORT AND RECOMMENDATION - 23

1    Mr. Palmer argues that this evidence was insufficient because (1) there was no

2  independent or corroborative evidence of what Mr. Palmer said to Robison, and (2) Mr. Palmer

3  had no money and therefore no ability to complete the transaction with Robison.  Dkt. 2 at 5.

4  Mr. Palmer argues that there was no independent evidence that supported the statements of Mr.

5  Robison, that the state was not able to tape record the statement, and Mr. Palmer submitted

6  evidence as to Mr. Robison's lack of credibility.  Dkt. 2, p. 5.   Mr. Palmer testified in his own

7  defense and denied committing the charged offenses.   Dkt. 11, Exh. 26 at 937-1016; Exh. 27 at

8  1026-1152.  Mr. Robison acknowledged that Mr. Palmer told him he could not pay him then

9  and there, but that payment would come at a later time, after Mr. Palmer had time to generate

10  some revenue.  Dkt. 11, Exh. 23 at 626, 635, 684.

11    When the factual record supports conflicting inferences, the federal court must presume

12  - even if it does not affirmatively appear on the record - that the trier of fact resolved any such

13  conflicts in favor of the prosecution, and the court must defer to that resolution. See *Jackson*,

14  443 U.S. at 326, 99 S.Ct. at 2793; see also *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482,

15  2492-93, 120 L.Ed.2d 225 (1992) (reiterating this presumption and the deference owed).

16  "Jackson cautions reviewing courts to consider the evidence 'in the light most favorable to the

17  prosecution.'"  *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir.2004) (quoting *Jackson*).  "A

18  jury's credibility determinations are ... entitled to near-total deference under *Jackson*."  *Id*.; see

19  also *Schlup v. Delo*, 513 U.S. 298, 330, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995) ("under

20  *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of

21  review").  Additionally, "'[c]ircumstantial evidence and inferences drawn from it may be

22  sufficient to sustain a conviction.'"  *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir.1995)

23  (citation omitted).

REPORT AND RECOMMENDATION - 24

1   The determination of a witness's credibility generally is a question for the jury, and

2   under the clearly established federal law governing *Jackson* claims, "[a] jury's credibility

3   determinations are entitled to near-total deference under *Jackson*." *Bruce*, 376 F.3d at 957; see

4   also *Schlup*, 513 U.S. at 330, 115 S.Ct. at 868; *Walters*, 45 F.3d at 1358 (the reviewing court

5   "must respect the province of the jury to determine the credibility of witnesses, resolve

6   evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the

7   jury resolved all conflicts in a manner that supports the verdict").

8   

9   Given that required deference, the trial court's conclusion as the trier of fact, that Mr.

10  Robison was credible and Mr. Palmer was not, reflected a reasonable determination by the state

11  court.  See, Dkt. 11, Exh. 3 at 11.   The trial court made the following findings:

12  

13          Mr. Robinson, who had a good relationship with the defendant, testified that the
            defendant had quite a temper.  He witnessed the defendant's temper because they
14          had gotten into an altercation over some tools.  Mr. Robison visited Mr. Palmer in
            jail for the first nine to eleven days.  During these visits Mr. Palmer asked Mr.
15          Robison if he knew where Ms. Reed was and to draw a map to find her.  He
            appeared to be desperate to get this information.  The defendant told Mr. Robison
16          that if he made sure that Ms. Reed did not show up to court he would pay him
            $10,000.  Mr. Robison notified Ms. Reed immediately.  The Black Diamond
17          Police Department contacted Mr. Robison to set up a wire, which was
            unsuccessful.  However, during several visits, Mr. Robison discussed with the
18          defendant a plan to kidnap Cordelia Reed.  The defendant did not seem concerned
            with the details.  He just wanted Mr. Robison to make sure that Ms. Reed was not
19          available for trial.

20  Exh. 11, Dkt. 3, pp. 9-10.[5]

21  

22          At the conclusion of Mr. Palmer's trial, the trial court specifically found Ms. Reed's

23  testimony to be credible because it was corroborated by the physical evidence and other

24  witnesses.  Dkt. 11, Exh. 3, p. 5.  The court also found that evidence of Mr. Palmer's

25  

26  ─────────────
    [5] See Dkt. 11, Exh. 3 (trial court's written findings and conclusions) and Dkt. 11, Exh. 29 (transcript of verdict).

REPORT AND RECOMMENDATION - 25

discussions with Robison and Poasa clearly referred to plans to kidnap and kill Ms. Reed.  *Id.*
The trial court specifically found Palmer's testimony not credible.  Dkt. 11, Exh. 3, p. 5.

Additionally, the fact that Mr. Palmer did not have funds sufficient to pay a kidnapper
does not mean he could not offer to give money or something else of value.  Criminal
solicitation under RCW 9A.28.030 requires proof that the defendant "offer to give … money or
other thing of value."  There was sufficient evidence to show that he offered money or other
things of value to Mr. Robison in exchange for kidnapping Ms. Reed.

       (ii)    *Solicitation to Commit Murder in the First Degree*

At the conclusion of the evidence presented at trial, the trial court entered the following
findings of fact regarding the solicitation to commit murder charge:

> Michael Poasa knew a lot of people in common with the defendant.  He met Mr.
> Palmer in jail.  The defendant asked Mr. Poasa to make sure that Ms. Reed did not
> make it to court on multiple occasions.  The defendant made it clear on repeated
> occasions that he wanted Mr. Poasa to kill Cordelia Reed.  Mr. Palmer promised
> [the] Mr. Poasa anything he wanted in return, property or cash.  They formulated
> a code presented in Exhibit 58, which is a coded note that is written by Poasa
> from information given to him by the defendant.  This code gave the name of Ms.
> Reed, her physical description, direction on how to get to the places she stayed in
> Enumclaw and in Black Diamond, and a phone number where she could be
> reached.  It is clear from Exhibit 58 that they are referring to Ms. Reed.  In
> exhibits 62 and 66, recorded statements from a conversation between the
> defendant and Mr. Poasa, Mr. Palmer gave directions how to find Ms. Reed,
> explained where she was living; and then told Mr. Poasa about money that he had
> coming in.  Mr. Palmer said "Now it will be really good if they don't find the
> garbage anywhere."  It is clear that he was talking about killing Ms. Reed.  Mr.
> Poasa asked if he could have $25,000 and the defendant replied in the affirmative.
> Mr. Palmer also told Mr. Poasa that he could get the .257 from Bill Hawthorne.
> They also discussed a plan in which Mr. Poasa was to wait outside the house
> where Ms. Reed was staying, and when she came out to use the outhouse, he
> could slit her throat.

Dkt. 11, Exh. 3, pp. 10-11.

REPORT AND RECOMMENDATION - 26

Mr. Palmer argues that there was insufficient evidence to convict him of this charge because Mr. Poasa testified that Mr. Palmer told him that he was "tapped out" and his resources depleted.  RP775.   Mr. Palmer argues that he was in state custody at the time and would not have had the resources to secure funds to pay Mr. Poasa.  Dkt. 2, p. 5.  In addition, he argues that other than Mr. Poasa's testimony, there was no other evidence submitted to support Mr. Poasa's allegations.  *Id.*

The record confirms the trial court's findings.  The record reflects that Michael Poasa was an inmate at the jail in early 2003 who shared some common business associates with Mr. Palmer.  Dkt. 11, Exh. 24 at 704-06.  Mr. Palmer spoke to Poasa constantly about making sure the victim in his case did not appear at his trial because, in Mr. Palmer's words, "no witness, no case."  *Id.* at 709-10, 729.  Mr. Palmer repeatedly offered Poasa property and cash to kill the victim, providing Poasa with her name and description, directions to locations where she could be found, people she might be associating with, and locations where weapons could be obtained.  *Id.* at 710-12, 713-23.  These conversations occurred while both men were in the jail and on later occasions, after Poasa had been released and came to visit Mr. Palmer at the jail.  There was no doubt in Poasa's mind that Mr. Palmer was offering him money specifically in exchange for killing the victim and "bury[ing] the bitch."  *Id.* at 719, 741.  Mr. Palmer quoted Poasa figures of $50,000, and later $100,000, for killing the victim.  *Id.* at 747.

As noted above with regard to Mr. Robison's testimony, the determination of a witness's credibility generally is a question for the jury, and under the clearly established federal law governing *Jackson* claims, "[a] jury's credibility determinations are entitled to near-total deference under *Jackson*."  *Bruce*, 376 F.3d at 957; see also *Schlup*, 513 U.S. at 330, 115 S.Ct. at 868; *Walters*, 45 F.3d at 1358.   At the conclusion of Mr. Palmer's trial, the trial court

REPORT AND RECOMMENDATION - 27

specifically found Ms. Reed's testimony to be credible because it was corroborated by the physical evidence and other witnesses.  Dkt. 11, Exh. 3, p. 5.  The court also found that evidence of Mr. Palmer's discussions with Robison and Poasa clearly referred to plans to kidnap and kill Ms. Reed.  *Id.*  The trial court specifically found Palmer's testimony not credible.  Dkt. 11, Exh. 3, p. 5.

Respecting the province of the trier of fact to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the trier of fact resolved all conflicts in a manner that supports the verdict, the court finds that there was sufficient evidence to convict Mr. Palmer of the charge of solicitation to commit murder.

Even though Mr. Palmer may not have had immediate access to money while he was incarcerated, it is clear from the record that he offered to pay money to Poasa to kill Ms. Reed. Criminal solicitation under RCW 9A.28.030 does not require the defendant to be presently financially able to pay; it merely requires the defendant's "offer to give … money or other thing of value."  Viewing the evidence in the light most favorable to the State, there is sufficient evidence that Mr. Palmer offered to give money or other things of value to Poasa in exchange for killing Ms. Reed.

(iii)     *Rape in the First Degree*

Mr. Palmer claims that because the State did not prove he was armed with a knife on the third rape count (Count VI), "it is clear that on the two remaining counts the facts were not established."  Dkt. 2 at 6.  Therefore, he argues, "[t]he State failed to establish beyond a reasonable doubt that Mr. Palmer was armed with a knife."  *Id.*

REPORT AND RECOMMENDATION - 28

As noted above, when evaluating a claim of insufficiency of the evidence to support a conviction, the question is not whether the Court itself believes the evidence establishes guilt. "Instead, the relevant question is whether . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

In rejecting Mr. Palmer's argument that the evidence was insufficient to convict him of the three counts of first degree rape, the Washington Court of Appeals stated:

> Next, Palmer argues that the evidence was insufficient to convict him of the three counts of first degree rape. More specifically, he argues that there was insufficient proof that he used a weapon on any of the three counts. But Reed specifically testified that Palmer held a knife to her throat and threatened to cut her heart out immediately prior to the first rape, and just before the second rape, he picked up a knife and held it toward her. During the third rape, one of Palmer's guns was in the room and he referred to it. Under the circumstances, the court could rationally find that Palmer threatened to use a deadly weapon and was armed with a deadly weapon for the first two counts of rape. Likewise, while he was not armed with a deadly weapon during the third count, the rape was achieved by the implied threat to use the gun in the room if Reed resisted him. In sum, the evidence was clearly sufficient to find the challenged elements of Palmer's offenses proved beyond a reasonable doubt.

Dkt. 11, Exh. 15, pp. 2,5-7.

Under Washington law, when a defendant is accused of threatening to use a deadly weapon while committing a rape, the State need not prove that the defendant actually used a deadly weapon. It is sufficient to prove that the defendant threatened to use a deadly weapon. *State v. Hentz*, 99 Wn.2d 538, 663 P.2d 476 (1983) (defendant threatened to "shoot" victim with toy pistol, which she believed was a real pistol). As noted by the court in *Hentz,* "[t]his type of threat is equally terrifying and effective whether or not the perpetrator actually possesses a deadly weapon, in light of the personal nature of the crime and the inability of a victim to defend against a bullet or other deadly force." *Id.*

REPORT AND RECOMMENDATION - 29

1    In *State v. Coe*, 109 Wn.2d 832, 845, 750 P.2d 208 (1988), the court concluded that the

2   element of first degree rape requiring use or threat of use of a deadly weapon is satisfied by the

3   threat itself, without evidence of the actual existence of a deadly weapon.  *Id.* at 214-215

4   ("[T]he effect upon the victim is the same whether the deadly weapon is actually seen or

5   merely described, by removing the possibility of self-defense.").  See also, *State v. Lubers*, 81

6   Wn.App. 614, 620–21, 915 P.2d 1157 (1996) ("Not all threats come via words; a non-verbal

7   threat can be every bit as menacing.").   The threatened use of a deadly weapon can be at any

8   point during the rape; evidence that defendant produced a gun only after the rape was already

9   in progress was not support for giving a second degree rape instruction.  *State v. Brown*, 127

10  Wn.2d 749, 903 P.2d 459 (1995).

11    In *State v. Bright,* 129 Wash.2d 257, 916 P.2d 922 (1996), the Washington Supreme

12  provided the following guidance regarding use of implied threats to use a deadly weapon:

> In both *Hentz* and *Coe* the court was concerned that a credible threat to use a
> deadly weapon made by the perpetrator of a rape could as likely render the victim
> unable to defend against the rape as it would if the perpetrator actually possessed
> a deadly weapon.  [Court's footnote omitted].  It follows from that reasoning that
> a perpetrator could also satisfy RCW 9A.44.040(1)(a) by suggestively looking at
> or referring to a weapon actually in the perpetrator's possession, or doing
> anything else which implied the perpetrator would use it to gain compliance by
> the victim. Such a credible threat, although not expressly made, would similarly
> place a victim at a severe disadvantage in defending against the rape.

*Bright,* 916 P.2d at 927.

    The record reflects that there was substantial evidence supporting the convictions of the

first two rape counts.  Ms. Reed testified that Mr. Palmer, immediately before he raped her the

first time, held a knife to her throat and threatened to cut her heart out and slit her son's throat.

Dkt. 11, Exh. 21 at 403-05.  She testified that prior to the second rape, Mr. Palmer again picked

up the knife and held it toward her.  *Id.* at 414-20.

REPORT AND RECOMMENDATION - 30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The record also reflects that there was substantial evidence supporting the conviction

for the third rape count.   The element of first degree rape requiring use or threat of use of a

deadly weapon was satisfied in this case by evidence that there was a rifle in the room and that

Mr. Palmer threatened to use it.   Ms. Reed testified Mr. Palmer brought two rifles and a

shotgun into the bedroom earlier in the day and that he left one of the rifles in the bedroom at

the end of the dresser.  Dkt. 11, Exh. 21, pp. 428-431.

The trial judge made the following findings with regard to the third rape:

> 17.     Later that night the defendant allowed her to go to her house in order to let
> her son in.  The defendant drove Ms. Reed to her son's house.  Along the way he
> stopped and told her that she was just to let him in the house and then get back
> into the truck.  The defendant told Ms. Reed that if she disobeyed[, h]e would slit
> her throat and kill her son.  At the house, Ms. Reed's son was upset with her
> because she had not been home to let him inside.  Also present was Lisa Smith.
> During this time, Ms. Reed was obviously in distress.  She appeared scared and
> appeared to be crying.  Ben and Ms. Smith were concerned for her safety.  After a
> short time, the defendant forced her back into the truck.  As they were leaving she
> slid across the front seat of the truck and tried to get out of the front door.  The
> defendant grabbed her by the hair, pulled her back into the seat and drove off
> quickly.  Once back in the house he took her to the bedroom and took off her
> clothes and raped her a third time.  He shoved her knees to her chest and had
> forcible anal intercourse with her.  This third rape caused Ms. Reed pain,
> describing it as a ten on a scale of ten.  During the rape, the defendant reminded
> her of one of the guns in a "Shut up and behave" manner.  She could not
> specifically remember where the gun was located in the room.

Dkt. 11, Exh. 3, p. 6.

The trial judge concluded that the third rape occurred "under circumstances where the

defendant used or threatened to use a deadly weapon, the gun as described in the testimony of

Cordelia Reed."  Dkt. 11, Exh. 3, p. 12.   Based on its review of the evidence, the Washington

Court of Appeals concluded that, although Mr. Palmer was not armed with a deadly weapon

during the third rape, the rape was achieved by the implied threat to use the gun in the room if

REPORT AND RECOMMENDATION - 31

Ms. Reed resisted him.  Dkt. 11, Exh. 15, p. 7.  There was clearly sufficient evidence to support the Petitioner's conviction of rape in the first degree in Count VI.

The Washington Court of Appeals' adjudication of Mr. Palmer's insufficiency of evidence claim was neither contrary to, nor an unreasonable application of *Jackson v. Virginia*, the governing legal standard for review of such claims.  Therefore, the undersigned recommends that Mr. Palmer's fourth claim for habeas relief be denied.

*SUMMARY CONCLUSION*

Based on the foregoing discussion, the undersigned recommends that Mr. Palmer's habeas petition should be **denied**, and this action **dismissed**.  No evidentiary hearing is required as the record conclusively shows that Petitioner is not entitled to relief.

*CERTIFICATE OF APPEALABILITY*

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Based on a thorough review of the record and analysis of the law in this case, the undersigned concludes that Mr. Palmer is not entitled to a COA with respect to any of the claims asserted in his petition because he has not demonstrated that jurists of reason could disagree with

REPORT AND RECOMMENDATION - 32

1   the district court's resolution of his constitutional claims or could conclude the issues presented

2   are adequate to deserve encouragement to proceed further.

3                                    *WRITTEN OBJECTIONS*

4          Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

5   Procedure, the parties shall have fourteen (14) days from service of this Report and

6   Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections

7   will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140

8   (1985).   Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

9   matter for consideration on **April 23, 2010**, as noted in the caption.

10

11          DATED this  5th   day of April, 2010.

12

13

14

15                                              Karen L. Strombom
                                                United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 33